HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAM JOHNSON,

     Plaintiff,

 v.

KING COUNTY,

     Defendant.

CASE NO. 2:17-cv-05862-RBL

ORDER DENYING PLAINTIFF'S MOTION TO AMEND

THIS MATTER is before the Court on Plaintiff Pam Johnson's Motion to Amend her complaint. Dkt. #14.

**I. BACKGROUND**

Washington's "levy lid" statute limits the rate at which a taxing district may increase the regular annual property tax levy amount. RCW 84.55.[1] The limit factor is 101 percent of the prior year's rate. RCW 84.55.050(2). A taxing district (like King County) may submit to voters a proposition that will "lift" the levy lid. RCW 84.55.050(1). The dollar amount of a levy lid may

---

[1] RCW 84.55.050 has been amended twice since voters approved the property tax increase at issue in this case. Only former RCW 84.55.050 (2009) is at issue here.

ORDER DENYING PLAINTIFF'S MOTION TO AMEND - 1

not be used as the base amount for computing "subsequent levies," unless the proposition's ballot title "expressly" states that it will be so used. RCW 84.55.050(1), (4)(c).

Washington also provides a streamlined procedure for anyone to challenge *any* ballot title if he claims it is not accurate. *See* RCW 29A.36.090. Any challenge must be filed with the county's auditor within ten days of the date the ballot title is filed. *Id*.

In 2012, the King County Council passed Ordinance No. 17304, a "levy lid lift" to collect additional property taxes for nine years, beginning in 2013. The Ordinance stated that "the [new] 2013 levy amount would become the base upon which levy increases would be computed for each of the eight succeeding years."

Proposition 1 placed Ordinance No. 17304 before the voters. Its ballot title explained that "increases in the following eight years would be subject to the limitations in chapter 84.55 RCW, all as provided in Ordinance No. 17304." Unlike the Ordinance itself, Prop. 1's ballot title did not expressly state that the 2013 levy rate would be used to calculate levy amounts for nine years.

Voters approved Prop. 1 and thus authorized King County to impose an additional property tax levy at a rate above the 101% limit for nine years. King County applied that rate to its overall rate, and multiplied the new combined rate by the total value of taxable property to produce 2014's total permissible levy rate. After nine years, the levy lid will revert to what it would have been, had voters not "lifted the lid" in 2012.

In 2016, End the Prison Industrial Complex ("EPIC") sued King County. It claimed Prop. 1 effectively authorized an increased property tax rate in 2013, but that King County's collection of increased property taxes in subsequent years was illegal, because Prop. 1's ballot title did not expressly state that it would do so.

EPIC argued that the ballot title implied that the property tax rate increase was for only one year. It sought to enjoin King County from collecting property taxes at the increased rate in subsequent years. The Pierce County Superior Court held that the ballot title language sufficiently authorized King County to levy property taxes in future years based on the increased base tax rate in the first year. *End Prison Indus. Complex v. King County*, 2016 WL 5940467, at *1 (Wash.Super.2016).

The Washington Court of Appeals reversed. It held that Prop 1's ballot title language was insufficient under RCW 85.55.050, and Prop. 1's passage did not authorize the County to use 2013's levy as a base for subsequent years: "Because EPIC sought to enforce the terms of the ballot title as written and approved by voters, EPIC's claim is not a challenge to the ballot's title that must be brought pre-election." *End Prison Indus. Complex v. King Cty.*, 200 Wn. App. 616, 633–34, 402 P.3d 918, 927 (2017) ("*EPIC I*"). The Court of Appeals reversed and remanded to the Superior Court for further proceedings.

Armed with *EPIC I*, Plaintiff Johnson sued King County in Pierce County Superior Court in 2017, on behalf of herself and all persons who paid King County property taxes since 2014, seeking a refund of taxes she claimed King County had illegally collected. Like EPIC, Johnson[2] claimed King County's property tax collections were illegal under RCW 84.55.010 and .050 because Prop. 1's ballot title was insufficient. Therefore, she argues, Prop. 1's passage did not authorize King County to use the dollar amount of the 2013 collections as the base upon which to calculate the levy limits in future years. She claimed that *EPIC I* collaterally estopped King County from re-litigating that issue.

---

[2] EPIC was represented by Johnson's attorney here.

Johnson also argued that the state's failure to provide a remedy for *all* taxpayers to obtain relief or a refund from an illegal or erroneous tax was a violation of due process, though she did not sue the state (or assert that any state statute was unconstitutional). *See* Plaintiff's Complaint at Dkt. #1, Ex. A at 4-14, 30.

King County removed the case here based on Johnson's due process claim. The parties stipulated to a stay while the Washington Supreme Court reviewed *EPIC I*, because Johnson's claims necessarily and explicitly relied on it. Indeed, Johnson stipulated that the Supreme Court's resolution that case was central to this one.

The Supreme Court reversed *EPIC I* in 2018. It held that, notwithstanding levy lid lift statute's (RCW 84.55's) specificity requirement, the ballot title challenge statute (RCW 29A.36.090) required any challenge or objection to a ballot title to have been filed within 10 days. It rejected EPIC's claim—identical to Johnson's here— that the 10-day limit did not apply, because no voter could have known what King County would do: "Ordinance 17304 placed the people on notice of King County's plan. Anybody who thought that the ballot title failed to expressly state something that former RCW 84.55.050 required could have raised that objection when the ordinance and the ballot title first became public, in 2012." *EPIC II*, 192 Wn.2d 560, 571, 431 P.3d 998, 1002-1003 (2018). It dismissed EPIC's claims as untimely.

This Court lifted the stay in February 2019. Johnson now seeks to amend her complaint in the aftermath of *EPIC II*. She claims that *EPIC II* was decided on "novel procedural grounds" and that it left intact *EPIC I*'s determination that King County's increased property tax collections after year one were illegal. She claims *EPIC II* did not address the constitutional issues raised in her proposed amended complaint, and did not opine on whether its requirement of a timely ballot title challenge could be applied to a tax refund action (as opposed to an action

seeking an injunction on the continued collection of increased taxes) without violating taxpayers' due process rights.

She seeks to expand her due process claim to assert the unusual claim that King County's anticipated defense—that her claim for a refund of "illegal" taxes depends on the success of a ballot title challenge claim that the Supreme Court already conclusively held was untimely—will itself violate her due process rights. Johnson claims that when King County inevitably points to the ten-day ballot challenge period (and to *EPIC II*), it will be "the moving force" behind a due process violation. She claims that anticipated defense supports a *Monell* claim against King County, and that it is timely because it hasn't even happened yet. She argues that RCW 29A.36.090 "does not comply with due process as a tax refund procedure."

King County argues that Johnson's proposed amendment is futile because her revised due process claim is based on a construction of Washington statutes and Ordinance 17304 that is foreclosed by *EPIC II*, and because it is time-barred.

## II. DISCUSSION

### A. Standard of Review

Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian*

*Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Capital,* 316 F.3d at 1052.

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir.1997)).

**B. Johnson's proposed Amended Complaint is Futile.**

Johnson argues that her proposed new claim is plausible. She argues that *EPIC II* reversed on a "novel" procedural basis, and that it did not hold that *EPIC I* was wrong on the merits. She continues to claim that King County's property tax collection scheme is "illegal" because Prop. 1's ballot title was not explicit enough. She also claims that *EPIC II* did not address or foreclose her proposed due process claim, or hold that the requirement of a timely ballot title appeal could be applied to a tax refund action without violating federal due process guarantees.

King County argues that Johnson's new claim is not plausible, and that adding it would be futile, because *EPIC II* held that RCW 29A.36.090's ten-day time limit applies to objections to ballot titles based on RCW 84.55.050. Because no one challenged the ballot title, any ballot-title-related challenge to Prop.1, the Ordinance, or the property tax was and is time-barred as a matter of law. It also argues, persuasively, that *EPIC II* already determined that it implemented the taxation structure that Ordinance 17304 described, and which voters approved:

> In this case, the meaning of Ordinance 17304 is plain. Section 3 contains the levy lid lift that voters authorized. That section describes the levy lid lift as "a regular property tax levy in excess of the levy limitation contained in chapter 84.55 RCW for nine consecutive years, commencing in 2012, with collection beginning in 2013, at a rate in the first year not to [sic] $0.07 per one thousand dollars of assessed value." (Ordinance 17304). That text indicates that the ordinance would

authorize a tax increase "for nine consecutive years." *Id*. There is nothing ambiguous about that. Nor is there anything ambiguous about how high the ordinance would lift the levy lid[.]

*EPIC II*, 192 Wn.2d at 570. *EPIC II* determined that King County is doing just what the Ordinance permitted it to do: "Ordinance 17304 does not describe the tax increase structure that EPIC advances. Instead, it unambiguously describes the taxation structure that King County has implemented." *Id*. at 569, 571. It is well-established that the "construction given to a state statute by the state courts is binding upon federal courts." *Albertson v. Millard*, 345 U.S. 242, 244, 73 S. Ct. 600, 602, 97 L. Ed. 983 (1953).

Johnson's proposed due process claim necessarily depends on the accuracy of her conclusion that King County's property tax is "illegal," and that claim in turn continues to depend entirely on the alleged ballot title deficiency. But *EPIC II* already held that King County's increased property tax rate for nine years was lawful, and that it could not be challenged based on Prop 1's ballot title.

Johnson argues that the ballot title appeal statute does not meet "minimum standards of due process," but denies she is challenging the statute's constitutionality.[3] Instead, she claims that *King County* is required to provide taxpayers a "fair opportunity to challenge the validity of their tax obligation" and a "clear and certain remedy" for the imposition of an erroneous or illegal tax, *citing Reich v. Collins,* 513 U.S. 106 (1994).

*Reich* arose from Georgia's (and other states') differential treatment of state and federal retirement benefits, for state income tax purposes. State-paid retirement benefits were exempt

---

[3] There is a procedure for challenging the constitutionality of a state statute, including notice to the Attorney General, which Johnson did not follow here. *See* Fed. R. Civ. P. 5.1 and 28 U.S.C. §2403(b). Johnson's apparent claim that the general ballot title challenge statute (RCW 29A.36.090) violates due process because it, like countless other statutes, does not provide a tax refund procedure is not plausible because it is not a tax refund procedure statute.

from Georgia's income tax, but federal retirement benefits were not. The Supreme Court held that scheme violated the intergovernmental tax immunity doctrine, and refund claims ensued.

Georgia would not refund the wrongly-collected income tax to resident federal retirees like Reich, and he sued. The Georgia Supreme Court held that the tax was legal when it was collected and would not grant a refund. The United States Supreme Court reversed, holding that Georgia had established a "clear and certain" post-deprivation remedial scheme—pay now, litigate later—for challenging taxes, and it was not constitutionally permitted to "bait and switch" and claim that once the tax was paid it was actually too late to obtain relief. It held that state taxes assessed in violation of federal law were the sort of "illegally assessed taxes" that Georgia's remedial statute required the state to refund. *See Reich*, 510 U.S. at 110; Ga.Code Ann. § 48-2-35(a) (1994).

*Reich* is not support for Johnson's proposed claim for at least two reasons. First, unlike *Reich*, there has been no determination that the property tax collection is illegal; there has instead been a Washington Supreme Court decision determining that any such claim based on the ballot title is irrevocably time-barred. Johnson continues to label the tax as "illegal" but she has not and cannot make that case without relying on the ballot title. Her claim requires this Court to either reverse or ignore *Epic II*, neither of which it can or will do.

Second, Johnson's claim that if *EPIC II* or the ballot title challenge time limit cuts off taxpayers' right to seek a refund for an "illegally assessed" property tax, then King County (like Georgia) is violating due process because it provides "no meaningful ways to challenge an erroneous or illegal tax." This is too broad and is inaccurate.

*EPIC II* specifically recognized that challenges to voter-enacted laws based on the Washington Constitution's "single subject and subject-in-title" rules (Article II, Section 19) may

be brought post-enactment. *See EPIC II,* 431 P.3d at 1005, *citing WASAVP*, 278 P.3d 632 (2012). It also pointed to *Washington Federation of State Employees v State*, 901 P.2d 1028 (1995), which held that an Article II, Section 19 challenge to a voter-enacted law was timely, while simultaneously declining to address the claim that the ballot title was insufficiently clear or accurate, because that claim was time-barred by RCW 29A.36.090. *EPIC II* at 1006.

*EPIC II* also recognized that if a local initiative exceeds the scope of the local initiative power, it can be challenged before it is put to the voters, or struck down after it passes. *See EPIC II,* 431 P.3d at 1005; *citing Sequim v Malkasian*, 138 P.3d 943 (2006). It explained that a post-enactment challenge of that type "does not involve the ballot titles clarity or accuracy—issues that are subject to quick and conclusive resolution. RCW 29A.36.090." *EPIC II,* 431 P.3d at 1006.

In short, *EPIC II* explained that substantive challenges are not barred by the expiration of the ballot title objection statute's ten-day period. But the ballot title is the only basis for Johnson's claim that the tax is "illegal"—she has not challenged the Ordinance or King County's continued collection of increased property taxes on any other basis. Johnson's claim that EPIC II is not fatal to her claim is based on her characterization of its hold as "procedural." The import of that characterization is not clear; EPIC II unambiguously held that it was too late to challenge the Ordinance's tax collection scheme based on the ballot title. Procedural or not, the determination is binding.

Johnson's proposed new claim (her existing claims are not the subject of this Motion[4] or Order) is premised exclusively on the insufficiency of the ballot title, an issue upon which she cannot prevail as a matter of law. It is untimely and it would be futile to permit her to assert it.

Johnson's motion for leave to amend her complaint is DENIED.

**IT IS SO ORDERED.**

Dated this 21st day of May, 2019.

Ronald B. Leighton
United States District Judge

---

[4] The Court will not convert a response to a motion to amend into a motion to dismiss. This Order addresses only Johnson's motion.